```
                   UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF MISSISSIPPI
                         JACKSON DIVISION
```

EDWARD WASHINGTON                                            PLAINTIFF

VS.                                  CIVIL ACTION NO. 3:11CV484TSL-MTP

THE UNIVERSITY OF MISSISSIPPI
MEDICAL CENTER, UNIVERSITY OF
MISSISSIPPI MEDICAL CENTER CAMPUS
POLICE DEPARTMENT, GARRETT
BRADFORD, ALFREDO HERNANDEZ, and
JOHN DOES 1-3                                               DEFENDANTS

                           consolidated with

MARTEZ SAMUEL                                                PLAINTIFF

VS.                                  CIVIL ACTION NO. 3:11CV485HTW-LRA

THE UNIVERSITY OF MISSISSIPPI
MEDICAL CENTER, UNIVERSITY OF
MISSISSIPPI MEDICAL CENTER CAMPUS
POLICE DEPARTMENT, GARRETT
BRADFORD, ALFREDO HERNANDEZ, and
JOHN DOES 1-3                                               DEFENDANTS

                     MEMORANDUM OPINION AND ORDER

   This cause is before the court on the motion of defendants University of Mississippi Medical Center (UMMC), University of Mississippi Medical Center Campus Police Department, Garrett Bradford and Alfredo Hernandez for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs Edward Washington and Martez Samuel have not responded to the motion, and the deadline for responding has passed.[1] The court,

---

[1] At the time the motion was filed, plaintiffs were represented by counsel. While the motion was pending, plaintiffs' counsel sought and were granted leave to withdraw. Plaintiffs were given reasonable time to find new counsel, failing which they

having considered defendants' memoranda of authorities, together with attachments, concludes their motion is well taken and should be granted.

Plaintiffs brought their complaints[2] under 42 U.S.C. § 1983 alleging that individual defendants Bradford and Hernandez, in the course and scope of their employment as security officers with the University of Mississippi Medical Center Police Department (UMMCPD), used excessive force against plaintiffs in violation of plaintiff's rights under the Fourth, Fifth, Fourteenth and Eighth Amendments, and further alleging claims against defendants under the Mississippi Tort Claims Act (MTCA), Miss. Code. Ann. § 11-46-1, *et seq.*, for negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, gross negligence and assault and battery.  Plaintiffs' claims relate to an incident that occurred in the UMMC Medical Intensive Care Unit (MICU) on October 31, 2010.  The incident is described in detail in the deposition testimony of defendants Bradford and Hernandez and the affidavits of Larry Iles, Chief of Police for the UMMCPD, Kristina Vaughn, M.D., Sergeant Bo Webb with the

---

would be considered to be proceeding pro se.  Plaintiffs were advised of the deadline for responding to defendants' summary judgment motion and informed that should they fail to respond, the court could rule on their motion without their response.

   [2]   Plaintiffs originally filed separate actions in state court.  Following removal of both cases to this court, the cases were consolidated.

UMMCPD, and Officers Josetta Moore and Catlin May of the UMMCPD. On that Sunday evening, Mrs. Edward Washington, wife of plaintiff Edward Washington and mother of plaintiff Martez Samuel, passed away while a patient in UMMC's MICU.  Upon her passing, Dr. Vaughan and a Dr. Faught met with family members in the MICU conference room.  Once Dr. Vaughn informed the family of Mrs. Edwards' death, her two sons (one of whom was Samuel) became irate.  According to Dr. Vaughn, the taller son picked up the conference table and flipped it.  The shorter son then charged at Dr. Vaughn, and pounded a filing cabinet as Dr. Vaughn fled the room.  As she ran from the room, Dr. Vaughn yelled for the nurses to call a "Code White", a priority call to UMMCPD that means there is a significant disturbance involving a patient or a patient's family members.  Dr. Vaughn then hid in a comatose patient's room until the police arrived.

Officer Josetta Moore was the first to respond to the call, followed by Officers Bradford and Hernandez.  Upon her arrival at MICU, a nurse informed Officer Moore of the disturbance in the conference room.  In the meantime, some of the family members had moved into the hallway, and as reflected by the officers affidavit, one of them, Samuel, began loudly screaming profanities, causing a disturbance.  According to the officers' affidavits, Officer Bradford asked Samuel to calm down, and when he did not, Bradford moved him away from the rest of the crowd,

3

sat him in a chair and again tried to get him to calm down, telling him he would have to leave the hospital if he did not calm down. The officers state that Samuel cursed Bradford and head-butted him; Samuel denies this.

Edward Washington, the decedent's husband, testified that about that time, he left his wife's MICU room and approached Bradford, who had his son Samuel restrained in a chair. Washington claims that when he knelt down by them to try to find out what was going on, Bradford struck him. However, Bradford and the other officers have testified that when Bradford attempted to restrain Samuel after Samuel head-butted him, Washington rushed in and grabbed, pushed or struck Bradford. The other officers went to assist, but were rushed by other members of the family. During what one officer described as the ensuing "rumble" between the officers and the Washington family, both Bradford and Hernandez drew their weapons and told the family members to back away. Bradford explained in his testimony that during the melee, he was struck more than once, and he himself began swinging, trying to defend himself. He states that he drew his weapon after he felt someone tugging at his gun, attempting to remove it from the holster. Once Hernandez and Bradford had reholstered their guns and order had been restored, the officers took Samuel and Washington into custody for their assault on Bradford.

4

Washington and Samuel allege in this action that the officers used excessive force against them in violation of their Fourth, Fifth, Eighth and Fourteenth Amendment rights, for which each seeks compensatory damages of $500,000 and punitive damages of $1,000,000. In their motion, defendants argue that plaintiffs' § 1983 claims against UMMC, UMMCPD and the officers in their official capacities fail as a matter of law because UMMC is an arm of the state, and a State is not a "person" within the meaning of § 1983.[3] See Mawson v. Univ. of Miss Med. Ctr., Civil Action No. 3:11cv574-DPJ-FKB, 2012 WL 6649323, 2 (S.D. Miss. Dec. 20, 2012) ("UMMC, as an arm of the state, is not a 'person' within the meaning of 42 U.S.C. § 1983, and therefore is not a proper defendant in a § 1983 suit.") (citations omitted); McGarry v. Univ. of Miss. Med. Ctr., 355 F. App'x 853, 856 (5th Cir. 2009) (UMMC is an arm of the University of Mississippi, a state agency); Will v. Michigan Dep't of State Police, 491 U.S. 58, 68–70, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) (states and state officials sued in their official capacities are not deemed "persons" subject to suit within the meaning of § 1983); Hafer v. Melo, 502 U.S. 21,

---

[3]  Although plaintiffs purport to have sued not only UMMC but the UMMC Police Department, a university police department is not considered an entity separate from its university. Thomas v. Univ. of Central Ark. Police Dept., No. 4:09CV00902BSM/HLJ, 2010 WL 1643278, 1 (E.D. Apr. 22, 2010); Williams v. Univ. of Ill., 945 F. Supp. 163 (N.D. Ill 1996) (holding that university police department did not enjoy a separate legal existence independent of the public university and hence was not a suable entity pursuant to § 1983).

27, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) ("[s]tate officers sued for damages in their official capacity are not 'persons' for purposes of the [§ 1983] suit because they assume the identity of the government that employs them"). Defendants are correct and therefore, plaintiffs' federal claims against these defendants will be dismissed.

Officers Bradford and Hernandez have moved for summary judgment as to plaintiffs' § 1983 claim against them in their individual capacities, based both on qualified immunity grounds and on the merits. Their motion will be granted.

Since plaintiffs' claim in this cause relates to an alleged use of excessive force that occurred while plaintiffs were free citizens, their claim is properly analyzed under the Fourth Amendment, and therefore they do not state a claim for violation of the Fifth, Eighth or Fourteenth Amendments. See Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (holding that "*all* claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...."). Regarding a Fourth Amendment excessive force claim, the Fifth Circuit has held that "it is clearly established ... that in order to state a claim for excessive force in violation of the Constitution, a plaintiff must allege (1) an

6

injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." Ikerd v. Blair, 101 F.3d 430, 433-34 (5th Cir. 1996) (internal quotation marks, citation, and footnotes omitted); Bazan ex rel. Bazan v. Hidalgo County, 246 F.3d 481, 487-488 (5th Cir. 2001) (quoting Ikerd).

Defendants note in their motion that although plaintiffs have named Officer Hernandez as a defendant and have alleged that he used excessive force against them, it is established by the undisputed evidence that the only arguable "force" he used was drawing his weapon. In the court's opinion, his use of such force was objectively reasonable under the circumstances established by the undisputed evidence. Accordingly, plaintiffs' § 1983 claim against Hernandez in his individual capacity will be dismissed.

For his part, Officer Bradford maintains that his actions were also objectively reasonably as a matter of law, and that in any event, plaintiffs cannot prevail as neither has any proof that he suffered any injury as a result of any alleged excessive force. In his complaint, Samuel alleged that Officer Bradford "shoved him onto a bench and yelled at him to be quiet," that two officers "began to berate and then physically assault and beat [him] [and] placed him in handcuffs." The record includes testimony from Samuel in which he states that Bradford physically moved him away from the rest of his family and "pushed" or "shoved" him into a

7

seat and yelled at him that he needed to be quiet. Bradford does not deny this. However, there is no record evidence to support Samuel's allegation that Bradford otherwise physically assaulted or beat him. The court concludes that Bradford's use of force was objectively reasonable under the circumstances. There is ample evidence of a disturbance in the MICU, in which Samuel was a central figure. The evidence establishes without dispute that Samuel was agitated and became disruptive following his mother's death; Bradford's actions were merely intended to get Samuel to calm down. They were objectively reasonable under the circumstances and as a matter of law, based on the undisputed facts, did not amount to excessive force. Accordingly, Samuel's § 1983 claim against Bradford will be dismissed.

Plaintiff Washington has claimed that while he was talking to Bradford and trying to figure out why Bradford had his son restrained in a chair, Bradford hit him. Washington has denied that he hit Bradford first. While that may be true, the officers present testified that when Washington first approached Bradford, he either grabbed, pushed or shoved Bradford. Additionally, Bradford testified that Washington "had his hand back like he was fixing to punch me." Bradford maintained that he acted only to defend himself. Bradford submits, and the court agrees, that as a matter of law, based on this uncontroverted evidence, his actions were objectively reasonable.

Bradford notes further that Washington has presented no evidence to establish that he suffered any injury, or any more than a de minimis injury, from this encounter. The injury necessary to support an excessive force claim "must be more than a de minimis injury and must be evaluated in the context in which the force was deployed." Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001) (citing Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999)). Here, Washington has offered no proof that he suffered even a de minimis injury. There is evidence in the record that Washington presented to a hospital emergency room complaining of a headache three days after the alleged incident. However, there is nothing in the medical records (or otherwise) to indicate that his headache was causally connected to any actions by Bradford. On the contrary, the report from his emergency room visit recites that there was no visible sign of injury and that the "exam shows your headache does not have any specific cause." For these reasons, Washington's § 1983 claim against Bradford in his individual capacity will be dismissed.

The MTCA is the exclusive civil remedy against a governmental entity or its employees for any state law tort claims. See Miss. Code Ann. § 11-46-7(1).[4] "Although the MTCA waives sovereign

---

[4] Mississippi Code Annotated § 11-46-7(1) provides: The remedy provided by this chapter against a governmental entity or its employee is exclusive of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity or

9

immunity for tort actions, it also prescribes exemptions from this statutory waiver under which a governmental entity retains its sovereign immunity." Miss. Dep't of Pub. Safety v. Durn, 861 So. 2d 990, 994 (Miss. 2003). For example, it provides:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury....

Miss. Code Ann. § 11-46-99(1)(c). Defendants submit that plaintiffs were in violation of three state laws at the time of the incident in the MICU, and specifically Miss. Code Ann. § 97-35-3 (disorderly conduct), § 97-35-7 (failure to follow the lawful commands of a law enforcement officer), and § 97-35-13 (disturbance in a public place). However, they further submit that even if the court were to find, or to assume for present purposes, that plaintiffs were not, in fact, engaged in criminal activity at the time of the subject incident, defendants still cannot be liable because the evidence does not show that Bradford

---

> its employee or the estate of the employee for the act or omission which gave rise to the claim or suit; and any claim made or suit filed against a governmental entity or its employee to recover damages for any injury for which immunity has been waived under this chapter shall be brought only under the provisions of this chapter, notwithstanding the provisions of any other law to the contrary.

and/or Hernandez acted in reckless disregard of plaintiffs' safety and well-being.

> As used in this statute, "reckless disregard" has been described by the Mississippi Supreme Court as "more than ordinary negligence, but less than an intentional act." City of Jackson v. Brister, 838 So. 2d 274, 280 (Miss. 2003); see also Titus v. Williams, 844 So. 2d 459, 468 (Miss. 2003) (stating that reckless disregard encompasses "willful and wanton" actions).  To meet this standard, the officer's conduct must "evince [] not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved." Maldonado v. Kelly, 768 So. 2d 906, 910-11 (Miss. 2000).  The Mississippi Supreme Court has further defined reckless disregard as a "conscious indifference to consequences, amounting almost to a willingness that harm should follow." Titus, 844 So. 2d at 468 (internal quotation marks omitted).  To avoid summary judgment, a plaintiff must create a genuine issue of material fact that the officers "took action that they knew would result or intended to result" in injury. Id.

Harris v. Payne, 254 Fed. Appx. 410, 421, 2007 WL 4105170, 11 (5th Cir. 2007).  Based on the undisputed facts of record, it is clear the conduct of Bradford and Hernandez does not rise to the level of "reckless disregard."  Therefore, defendants are immune from liability for any state tort claims.[5]

Based on all of the foregoing, defendants are entitled to summary judgment as to all of plaintiffs' claims and it is therefore ordered that defendants' motion for summary judgment is granted.

---

[5] Defendants have asserted several other exemptions from the MTCA's waiver of immunity.  However, since the police protection exemption is clearly applicable, the court need not consider their further arguments on these issues.

11

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 15th day of January, 2013.

                                        /s/ Tom S. Lee
                                        UNITED STATES DISTRICT JUDGE